**STATE ENGINEER OF THE STATE OF NEVADA, and Water Commissioners of the Sixth Judicial District Court, Petitioners,**

**v.**

**SOUTH FORK BAND OF THE TE–MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA; Marvin McDade, in his capacity a Chairman of the South Fork Band Council; and the United States of America, as Trustee for the South Fork Band of the Te–Moak Tribe of Western Shoshone Indians of Nevada, Respondents.**

No. CV–N–00679–ECR (RAM).

United States District Court,
D. Nevada.

Aug. 20, 1999.

Paul Taggart, Deputy Attorney General, Carson City, NV, for State Engineer of the State of Nevada.

Laura A. Schroeder, Portland, OR, for Intervenor Pershing County Water Conservation District.

Shirley Smith, AUSA, Reno, NV, Patrick Barry, Attorney Department of Justice, Washington, DC, for USA.

Raymond Rodriguez, Carson City, NV, for South Fork Band of the Te–Moak Tribe and Marvin McDade in his capacity as Chairman of the South Fork Band Council.

## AMENDED ORDER

EDWARD C. REED, Jr., District Judge.

The Order (# 41) filed on July 1, 1999, is amended to read as follows.

Presently before the Court is a motion to remand (# 6A) filed by the State Engineer and Water Commissioners of the Sixth Judicial District Court on December 10, 1998. This action was removed to this Court by Respondent United States (# 1), pursuant to 28 U.S.C. § 1441, on November 16, 1998. In response to the Petitioners' motion to remand, Respondent South Fork Band of the Te–Moak Tribe filed an opposition (# 14) on January 8, 1999, and Respondent United States filed an opposition (# 15) on January 11, 1999.

On December 9, 1998, Respondent United States filed an amended notice of removal (# 6) pursuant to 28 U.S.C. § 1442. Petitioners then filed, on December 11, 1998, a motion to strike (# 8) Respondent United States' amended notice of removal, and an amended motion to remand (# 16). On June 2, 1999, this Court denied (# 32) Petitioners' motion to strike Respondent United States' amended notice of removal. By filing an amended notice of removal, the U.S. has substituted § 1442 as its primary basis for removal, while continuing to argue that removal under § 1441 is also valid. The arguments raised in Petitioners' original motion to remand, which were solely directed against the applicability of § 1441, are now moot. Therefore, we deny Petitioners' original motion to remand (# 6A) as moot.

However, remaining before the Court is the amended motion to remand (# 16) filed by Petitioners, which is directed against Respondent United States' amended notice of removal (# 8). Two parties have opposed the Petitioners' amended motion to remand: Respondent South Fork Band of the Te–Moak Tribe filed its response (# 17) on January 20, 1999, and Respondent United States filed its response (# 20) on February 1, 1999. Petitioners have replied (# 21) on February 16, 1999. For the reasons outlined below Petitioners' amended motion to remand (# 16) is DENIED.

## BACKGROUND

This action was removed from the Sixth Judicial District Court of the State of Nevada, in and for the County of Humboldt, by Respondent United States. Prior to removal, Petitioners State Engineer and Water Commissioners had filed a petition for an amended order to show cause why the South Fork Band of the Te–Moak Tribe of Western Shoshone Indians, and the United States of America, should not be held in contempt for violating the Humboldt Decree. The asserted violations of the Decree were based upon the South Fork Band's refusal to allow the Water Commissioners of the Sixth Judicial District Court onto its reservation to regulate the Humboldt River, and its refusal to pay assessment fees.

Between 1937 and 1942, the United States of America purchased land in Nevada for the South Fork Band of the Te–Moak Tribe of the Western Shoshone Indians ("Tribe"). The land had appurtenant water rights that were adjudicated in the Humboldt Decree, a stream system adjudication decree that was issued in 1931 and amended in 1935 by the Sixth Judicial District Court of the State of Nevada. Since the purchase of lands for the Tribe, the United States and the Tribe have received their appurtenant water rights pursuant to the Humboldt Decree. During those years, the Water Commissioners have entered upon the Tribe's reservation to regulate the Humboldt River system pursuant to the decree, and have collected an annual assessment fee as provided in the decree.

On October 17, 1997, all water right holders in the South Fork of the Humboldt River were given their annual assessment for Humboldt water distribution for the period July 1, 1998, to June 30, 1999. The Tribe's assessment totaled $2,717.72. On March 8, 1998, the South Fork Band Council of the Tribe resolved that the Water Commissioners would not be allowed to regulate any of the upstream turnouts that supply the South Fork Reservation with irrigation water, and that the Council will not pay for water with money allocated to the Tribe for its use. Since the date of

this resolution, Nevada State Water Commissioners have not been permitted access to the South Fork Reservation and the Tribe has failed to pay its assessment for water distribution.

On June 11, 1998, the Nevada State Engineer filed a Motion for Order to Show Cause with the Sixth Judicial District Court of Nevada. On August 17, 1998, the Sixth Judicial District Court held a hearing to show cause why the Tribe should not be held in contempt and compelled to comply with State Engineer's Order 1145, which ordered the Tribe to permit the Water Commissioners of the Sixth Judicial District Court access to regulate the upstream turnouts that supply the Tribe with water, and to pay the October 17, 1997 assessment. On August 21, 1998 the court issued an Order granting the Tribe fourteen days in which to rescind its March 8 resolution, to allow the Water Commissioners access to the upstream turnouts, and to pay the annual assessment. The Tribe was warned that if it did not comply, the Sixth Judicial District Court would find it in contempt.

On September 18, 1998 the Tribe filed a motion to vacate the Order on the grounds that the State Engineer failed to join the United States as an indispensable party pursuant to Nevada Rules of Civil Procedure 19b. On October 19, 1998, the Nevada State Engineer filed a Petition for Amended Order to Show Cause in the Sixth Judicial District Court of Nevada joining the United States as a party. On November 16, 1998, Respondent United States removed the action from the Sixth Judicial District Court of Nevada to this Court (# 1). Subsequently, on December 16, 1998, Respondent Tribe filed a notice of removal joinder (# 9) joining in Respondent United States' notice of removal.

**DISCUSSION**

There are three jurisdictional thresholds to cross in our consideration of the question of the propriety of Respondent's removal. First, there must be statutory authority granting removal under the removal provisions of 28 U.S.C. §§ 1441–

1452. *Nebraska Dept. of Soc. Serv. v. Bentson*, 146 F.3d 676, 679 (9th Cir.1998) ("A defendant's power to remove a case to federal court is independent of the federal court's power to hear it. These are analytically distinct inquiries and should not be confused.").

Second, once statutory authority for removal has been established, the subject matter jurisdiction of the district court must then be determined. *Id.* ("Once a case is properly removed, a district court has the authority to decide whether it has subject matter jurisdiction over the claims.").

Third, a district court having subject matter jurisdiction over the claims must then determine if it should exercise that jurisdiction, in light of the doctrines of abstention and comity. *Burford v. Sun Oil Co.*, 319 U.S. 315, 332, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) ("[This] reflect[s] a doctrine of abstention appropriate to our federal system whereby the federal courts, [upon having subject matter jurisdiction] ... restrain their authority because of scrupulous regard for the rightful independence of the state governments and for the smooth working of the federal judiciary."). We examine each of these questions in turn.

**I. Statutory Authority Granting Removal**

The statutory authority granting removal of cases from state court to federal district court is set forth in the removal provisions of 28 U.S.C. §§ 1441–1452. Respondent United States originally removed pursuant to § 1441(# 1), and subsequently filed an amended notice of removal (# 6) asserting removal under § 1442. In Respondent's response (# 15) to Petitioner's motion to remand (# 6A) they argue that removal is valid under both § 1441 and § 1442.

■ Prior to 1996, the United States as a defendant could not remove a case from state to federal court. *See* 28 U.S.C.

§ 1442(a)(1) (1991). However, Congress subsequently enacted the Federal Courts Improvement Act of 1996, Pub.L. 104–317, 110 Stat. 3847, 3850, which amended the removal statute to expressly allow for removal by the United States as a defendant. *See* 28 U.S.C. § 1442(a)(1) (1997) (stating that a civil action brought against "[t]he United States or any agency thereof" is removable). *See Nebraska Dept. of Soc. Serv.,* 146 F.3d at 678. *See also Refvem v. Mirch,* 1999 WL 183621, *1 (N.D.Cal.1999) ("Mirch's third-party complaint seeks indemnity and contribution from the United States . . . . [T]he United States removed Mirch's complaint to this Court, pursuant to 28 U.S.C. § 1442(a)(1)."); *Porter v. Rathe,* 1998 WL 355499, *2 (D.Or.1998) (in its removal petition, the United States as intervenor-defendant "properly relies upon 28 U.S.C. § 1442(a)(1)"); *Clark v. United States,* 1997 WL 732611, *2 (D.Alaska 1997) ("Removal was proper under 28 U.S.C. § 1442(a)(1), which permits removal of any civil action against the United States . . . ."); *Floyd v. District of Columbia,* 129 F.3d 152, 155 (D.C.Cir.1997) (holding that "Federal removal jurisdiction would have been available under 28 U.S.C. § 1442(a)(1)" for United States as defendant).

Removal of this case was proper under the plain language of § 1442, giving this Court the authority to determine whether it has subject matter jurisdiction over the claims of this case. Because removal was proper under 28 U.S.C. § 1442(a)(1), there is no need for this Court to address the question of removal pursuant to 28 U.S.C. § 1441.

## II. This Court Has Subject Matter Jurisdiction Over This Action

"Once a case is properly removed, a district court has the authority to decide whether it has subject matter jurisdiction over the claims." *Nebraska Dept. of Soc. Serv.,* 146 F.3d at 679. The fact that the case was removed to district court, rather than originally filed there, does not change the analysis of subject matter jurisdiction, but only adds the removal analysis as an initial step. *Id.*

Petitioners raise three arguments in support of their claim that this Court does not have subject matter jurisdiction, and that the action should thus be remanded to the Sixth Judicial District Court of the State of Nevada: (1) the state court has exclusive jurisdiction over the enforcement of the Humboldt Decree, (2) removal interferes with Nevada's sovereign right to regulate waters within its borders, and (3) the Eleventh Amendment bars the removal of this action.

The Tribe asserts in its response (# 14) to Petitioners' initial motion to remand (# 6A), and in its response (# 17) to Petitioners' amended motion to remand (# 16), that the matter is properly removable to this Court, but that this Court should immediately dismiss for lack of subject matter jurisdiction due to the Tribe's federal common law immunity from suit in federal court.

Respondent United States vigorously asserts that this Court has subject matter jurisdiction over this case, and does not assert, either in its response (# 6) to Petitioners' amended order to show cause, or in its response (# 15) to Petitioners' motion to remand, or in its response (# 20) to Petitioners' amended motion to remand, that it enjoys sovereign immunity in this action. Thus there is no need for us to consider the potential sovereign immunity of Respondent United States in deciding this matter.

We will accordingly address Petitioners' three arguments, and Respondent Tribe's assertion of immunity from suit, in turn below.

### A. State Court Does Not Have Exclusive Jurisdiction to Enforce the Humboldt Decree

■ Petitioners argue that, due to the *in rem* nature of the Humboldt River adjudication, the state decree court holding the *res* in a related contempt action has sole

and exclusive jurisdiction of the contempt proceeding. This argument fails because Nevada Water Law clearly and unambiguously separates the *in rem* judicial phase of the adjudication of water rights in a stream system from the *in personam* enforcement phase. Because the instant action is an *in personam* enforcement action, as detailed below, the state decree court does not have exclusive jurisdiction in the enforcement of the Humboldt Decree.

Petitioners properly identify the three step procedure established by Nevada statute for the adjudication of the water rights held in a stream system such as the Humboldt River. First, the State Engineer initiates the administrative phase by defining the different appropriative rights and priority dates in the stream system and then enters an order of determination with the court having jurisdiction over the location of the stream system. NRS 533.090, 533.160 and 533.165. Second, in the judicial phase, the court then decrees a particular amount of water to each property for which proof existed of an appropriation for beneficial use. NRS 533.035. The judicial phase of an adjudication culminates in the entry of a final judicial decree of the water rights in the stream system and is conclusive upon all persons and rights lawfully embraced within the adjudication. NRS 533.210. Third, after the final decree is entered, the enforcement phase of the adjudication begins.

Petitioners correctly characterize the judicial phase of a stream adjudication as an *in rem* proceeding because the court's jurisdiction is exercised over the *res*—the water in the stream system being adjudicated. The action names the river or stream system and not the individual claimants of water rights.

However, the enforcement phase, under the Nevada scheme, allows the State Engineer to initiate an enforcement action on "any claimant to the use of water." N.R.S. 533.220(2). The State Engineer and Water Commissioners are officers of the court charged with enforcing the court's decree, and any non-compliance or interference in

the discharge of their duties is punishable as contempt of court. *Malone, State ex rel., v. District Court,* 52 Nev. 270, 271, 286 P. 418, 419 (1930). Civil contempt of court may result in a fine and/or imprisonment according to state statute. *Hinckley, State ex rel., v. Sixth Judicial District Court,* 53 Nev. 343, 346, 1 P.2d 105, 108 (1931) ("The court, after finding relator guilty of contempt, ordered that he pay a fine, and for failure to do so that he be incarcerated in the county jail until the fine be paid.").

In federal contempt actions the Federal Rules of Civil Procedure provide that "[a]n order of civil commitment of a person held to be in contempt of a decree or injunction issued to enforce the laws of the United States may be served and entered in any district." Fed.R.Civ.P. 4.1(b).

In an enforcement action pursuant to a judicial stream decree, the underlying *res* of the action is the water, but the enforcement of the rights of claimants thereto is *in personam.* *City of Fresno v. Edmonston,* 131 F.Supp. 421, 424 (S.D.Cal.1955). The punishment for civil contempt of a judicial stream decree, under both federal law and state law, is obviously not imposed against the stream system, but against individual persons interfering with the decree. Such contempt is punishable by the imposition of a fine, or payment of compensatory damages or attorney fees. Proceedings resulting in fines or other remedies cannot be construed as *in rem* actions. If the instant case is not an *in rem* action, then it does not matter that the court hearing an *in rem* action may have exclusive jurisdiction over the *res* involved. Thus the Petitioners' argument that the *in rem* nature of this action vests exclusive jurisdiction in the Sixth Judicial District Court fails.

However, there is an another argument which the Petitioners could have raised— that is, that although this action is *in personam,* it is a contempt proceeding, and such proceedings are generally exclusive to the court whose order is being violated.

*Wilson v. United States,* 26 F.2d 215, 218 (8th Cir.1928) (holding that it is the general rule that the only the court which has been offended can exercise the power to punish for contempt). However, when federal entities are the potential subject of a state civil contempt order, federal supremacy provides an exception to this rule. *Swett v. Schenk,* 792 F.2d 1447, 1450 (9th Cir.1986) (§ 1442 removal was proper after state court found federal officers in civil contempt of state court order for discovery and sentenced them to jail); *Nationwide Investors v. Miller,* 793 F.2d 1044, 1047 (9th Cir.1986) (holding § 1442 removal proper even when federal officer not yet subjected to shortly anticipated contempt proceedings); *Reynolds Metals v. Crowther,* 572 F.Supp. 288, 289 (D.Mass.1982) (holding § 1442 removal by OSHA officials of state court contempt proceedings was proper).

This exception is especially strong when the subjects of the state contempt order are Indian tribes. *White Mountain Apache v. Bracker,* 448 U.S. 136, 143–44, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) (states have only such power over the affairs of Indians as is granted by Congress and this Court has "rejected the proposition that in order to find a particular state law to have been pre-empted by operation of federal law, an express congressional statement to that effect is required"); *Eastern Band of Cherokee Indians v. Lynch,* 632 F.2d 373, 377 (4th Cir.1980) (holding that federal law preempts North Carolina jurisdiction over proceedings affecting the Indian lands held in trust by the U.S.).

Since the instant matter is an enforcement proceeding, it is not *in rem* even though the underlying adjudication of the Humboldt River may be. Thus Petitioners' argument that the Nevada court has exclusive jurisdiction over this matter due to its *in rem* nature fails. Likewise, although this is a contempt proceeding, the argument that the Nevada court has exclusive jurisdiction over it on that basis also fails due to the involvement of federal entities.

**B. This Court's Exercise of Jurisdiction Will Not Frustrate Nevada's Sovereign State Interests**

Petitioners argue that the decree court's contempt action should not be removable because it will frustrate the decree court's sovereign right to determine how the water resource will be allocated. Petitioners are correct in asserting that the State of Nevada enjoys the right to regulate and distribute its water resources. *Humboldt Lovelock Irr. Light & Power Co. v. Smith,* 25 F.Supp. 571, 573 (D.Nev.1938). However, this right of Nevada to allocate its water resource is not exclusive, and "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Colorado River v. United States,* 424 U.S. 800, 816, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *See United States v. Alpine Land & Reservoir Co.,* 697 F.2d 851, 858 (9th Cir.1983) (stating that "state law will control the distribution of water rights to the extent that there is no preempting federal directive"); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15–16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that the presence of federal law issues must always be a major consideration weighing against surrender of federal jurisdiction out of deference to parallel litigation brought in state court).

Additionally, the exercise of federal court jurisdiction over these claims would constitute, at worst, a minor interference with Nevada's State sovereignty, because in adjudicating water rights, federal courts must look to state law. *California v. United States,* 438 U.S. 645, 653, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978). "There is no body of Federal water law.... What rights the United States has and the extent thereof must be determined by the law of Nevada." *United States v. Hennen,* 300 F.Supp. 256, 260 (D.Nev.1968).

Federal district courts are often called upon to construe the state law of the jurisdiction in which they sit. *O'Brien v. Skin-*

*ner,* 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974). As such, it is assumed these federal courts are competent to accomplish this construction of state law without interfering with or derogating the subject state's sovereign interests. *Id.*

Thus, Nevada's sovereign state law interests in allocating its water do not warrant staying the exercise of federal jurisdiction in this matter. This is due to the minor potential for federal interference and frustration of Nevada's sovereign rights in this Court interpreting state law, and in light of the federal law issues present in the instant case.

### C. Nevada's Eleventh Amendment Immunity from Suit in Federal Court

Petitioners argue that the immunity granted by the Eleventh Amendment of the U.S. Constitution is an immunity against being made an involuntary party to an action in federal court. From this they argue that they should be able to invoke their immunity in this case, since, although the state chose to commence this action, it did not choose to do so in federal court. It has been dragged into federal court by the Respondents. However, this argument fails on two counts.

First, removal pursuant to § 1442 provides for removal of all civil actions against the United States, and does not require federal courts to have original jurisdiction over the action. Thus, while the "jurisdictional bar" of the Eleventh Amendment might prevent the district court from exercising original jurisdiction in this matter, which is required in a removal pursuant to § 1441, the lack of original jurisdiction does not bar removal pursuant to § 1442. Thus, Petitioners' reliance on *Steelcase* for the proposition that Eleventh Amendment immunity applies equally to a case in which a state brings a state court action as a plaintiff which is subsequently removed to federal court by the defendant is misplaced. *California v. Steelcase, Inc.,* 792 F.Supp. 84, 86 (C.D.Cal.1992). The defendant in *Steelcase* removed the actions on the ground of diversity of citizenship rath-

er than federal question. *Id.* at 84. The *Steelcase* court held that the state of California was not a citizen of any state and thus could not be sued in diversity and remanded the case to state court. *Id.* The court also found grounds for remand in the state's Eleventh Amendment immunity, but only so far as this immunity prevented the court from having "original jurisdiction" to hear the case required in a removal pursuant to § 1441(a) based upon diversity of citizenship. 28 U.S.C. § 1441(a).

The instant case is distinguishable from *Steelcase* in two essential ways: (1) removal was pursuant to § 1442 which has no original jurisdiction requirement, and (2) this Court's subject matter jurisdiction is grounded upon a federal question rather than diversity jurisdiction.

■ Second, Eleventh Amendment immunity does not extend to suits by the United States against a state. *Seminole Tribe v. Florida,* 517 U.S. 44, 77 n. 14, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In the instant case, although the State of Nevada, or more precisely, its officers and/or agencies, is in federal court without the state's consent, this is due solely to the actions of the United States. This has been held to be an exception to states' Eleventh Amendment immunity. *Id.*

For the foregoing reasons, our continued exercise of jurisdiction in the instant case is not a violation of Nevada's Eleventh Amendment immunity from suit in federal court. Therefore, we will not remand on this basis.

### D. Indian Federal Common Law Immunity From Suit

Respondent Tribe argues that once this matter is properly removed to this Court, we should immediately dismiss for lack of subject matter jurisdiction due to the Tribe's federal common law immunity from suit in federal court.

#### 1. Nature of Indian Immunity

■ "The issue of tribal sovereign immunity is jurisdictional in nature."

*McClendon v. United States*, 885 F.2d 627, 629 (9th Cir.1989) (citing *Chemehuevi Indian Tribe v. California State Board of Equalization*, 757 F.2d 1047, 1051 (9th Cir. 1985)). Indian tribes occupy a unique position in this nation's state/federal system. They are considered "domestic dependent nations" with retained inherent powers of self-government. *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 782, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). "Indian tribes have long been recognized as possessing common-law immunities from suit co-extensive with those enjoyed by other sovereign powers including the United States as a means of protecting tribal political autonomy and recognizing their tribal sovereignty which substantially predates our Constitution." *Pan American Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir.1989). "Absent congressional or tribal consent to suit, state and federal courts have no jurisdiction over Indian tribes; only consent gives the courts the jurisdictional authority to adjudicate claims raised by or against tribal defendants." *Id.*

Individual tribal members, however, enjoy no such immunity. *Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165, 171–72, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977). "We have never held that individual agents or officers of a tribe are not liable for damages in action brought by the State." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 514, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (referencing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

**2. The Tribe Waived Its Immunity Because United States Purchased Water Rights for it Subject to the Humboldt Decree and the Tribe Engaged in Actions Over the Fifty Years Since the Purchase Continually Ratifying Its Waiver**

Indian tribes can waive their sovereign immunity by consenting to be sued. *United States v. Oregon*, 657 F.2d 1009, 1013–14 (9th Cir.1981). Such a waiver may not be implied, but must be expressed unequivocally. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). "[T]ribal initiation of litigation alone does not establish waiver with respect to related matters ... [Nor] does it constitute consent to counterclaims asserted by defendants in those actions." *McClendon*, 885 F.2d at 630–31.

However, the Eighth Circuit has found that "an arbitration clause in a contract constituted a waiver of sovereign immunity." *Val-U Constr. Co. v. Rosebud Sioux Tribe*, 146 F.3d 573, 577 (8th Cir.1998) (stating that "while the Supreme Court has expressed its protectiveness of tribal sovereign immunity by requiring that any waiver be explicit, it has never required the invocation of 'magic words' stating that the tribe hereby waives its sovereign immunity"). The Supreme Court of Alaska has also found that "[t]here is little substantive difference between an agreement that any dispute arising from a contract shall be resolved by the federal courts and an agreement that any dispute shall be resolved by arbitration; both appear to be clear indications that sovereign immunity has been waived." *Native Village of Eyak v. G.C. Contractors*, 658 P.2d 756, 761 (Alaska 1983).

Further, several courts have held that certain actions taken in relation to specific litigation may waive tribal immunity. In fact, it has even been held that immunity can be waived by the United States acting on a tribes' behalf. "[I]nitiation of litigation by the United States [in its capacity as Tribal trustee] could result in waiver of tribal sovereign immunity despite the fact that the Tribe was not formally a party to the action." *McClendon*, 885 F.2d at 630 n. 1. In terms of a tribe's own actions, it has been held that "[a] tribe's intervention to establish fishing rights constituted consent to the district court's jurisdiction to issue and modify equitable decree which encompassed the tribe's rights." *Id.* (citing *United States v. Oregon*, 657 F.2d at 1014–15). In *United States v. Oregon*, the

Ninth Circuit found the tribe consented to suit on two separate, independent grounds. 657 F.2d at 1014. In addition to their consent by intervention, the court held that the tribe had consented to later suit by agreeing, as a party, to the 1977 decree adjudicated eleven years earlier, in which the court retained post-judgment jurisdiction for modification and enforcement of the decree. *Id.* at 1015.

> Here Washington and the tribe have a definite dispute over the management of anadromous fisheries; Washington believes that complete cessation of fishing is necessary to preserve the spring chinook and the tribe believes the opposite. This is exactly the type of dispute envisioned in [the] 1977 [decree] when the Yakimas agreed to submit any dispute to the Oregon district court.

*Id.* at 1016.

 In the instant case, the Respondent Tribe is the successor in interest to decreed water right owners under the terms of the Humboldt Decree, similar to the tribe's decreed anadromous fishing rights in *United States v. Oregon.* The Humboldt Decree was issued in 1931 by the Sixth Judicial District Court of the State of Nevada. The parties who owned the instant water rights at that time participated in the litigation leading to the Humboldt Decree, and these rights were fully adjudicated in the Humboldt Decree. After the Decree was issued, these rights were held by their owners subject to the requirements of the Decree, and the Sixth Judicial District Court retained jurisdiction over the Decree, the rights adjudicated therein, and the parties thereto for enforcement, etc. When the United States purchased the rights for the Tribe, it could only purchase what the prior owners owned—that is, the rights subject to the Decree. By choosing to purchase such rights, the U.S./Tribe chose to put itself in a position where it would be subject to the Decree, and thus waived its immunity.

Additionally, for over fifty years, the Humboldt Decree has been enforced in recognition of the U.S./Tribe's entitlement to receive water in the quantities defined by the decree. A water commissioner from the decree court has entered onto the Tribe's reservation to regulate the Humboldt River to assure that the Tribe and all non-Indian users receive their decreed water rights. Assessment fees have been paid as provided in the decree, initially by the U.S. and later by the Tribe itself. If there remained any doubt as to the United State's express and unequivocal waiver in behalf of the Tribe, in its initial purchase of the decreed rights, the Tribe's actions over the ensuing fifty years since the purchase of their decreed water rights clearly demonstrate a continuing ratification of its initial waiver of immunity. We follow the Ninth Circuit in finding that "[t]o hold at this stage that tribal immunity blocks modification [or enforcement] of an equitable decree would impermissibly violate a central tenet of equity jurisprudence, that of flexible decrees." *United States v. Oregon,* 657 F.2d at 1015. We therefore hold that the Respondent Tribe has waived its tribal immunity with regard to its voluntarily assumed contractual and judicial successor-in-interest water rights under the Humboldt Decree, and thus cannot assert such immunity in actions to enforce that Decree.

### 3. Analogous to Eleventh Amendment Immunity

 While the Tribe has thus clearly waived its immunity with regard to enforcement of the Humboldt Decree in the Sixth Judicial District Court of Nevada, an argument could be made that this waiver does not extend to enforcement actions in this Court. Nonetheless, the Tribe has clearly waived its immunity to suit in this Court by its actions *in this case.*

In the instant case, Respondent Tribe filed a notice of removal joinder (# 9) on December 16, 1998, joining Respondent United States' notice of removal to this Court. We have found no Ninth Circuit case law directly on point regarding the question of whether a defendant Indian tribe's removal of a case to federal court

constitutes a waiver of tribal sovereign immunity. However, Indian tribal sovereign immunity is closely analogous to a state's immunity from suit under the Eleventh Amendment. In order for a citizen to bring a suit against a state, either the state must have waived its right to Eleventh Amendment immunity or the United States Congress must have abrogated that immunity through a valid exercise of power. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). As with tribal immunity, a state's waiver of Eleventh Amendment immunity must clearly evidence the state's intent to subject itself to the jurisdiction of the federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

By voluntarily agreeing to participate in arbitration proceedings, a state waived immunity to a suit in federal court. *Premo v. Martin*, 119 F.3d 764, 769–71 (9th Cir. 1997). "[W]hen a state voluntarily invokes the jurisdiction of the federal court by commencing an action or removing a case to federal court, the state cannot later complain that it does not want to be in federal court after all." *Hill v. Blind Indus. & Serv.*, 179 F.3d 754, 758–59 (9th Cir.1999). "By removing case to federal court, the state unequivocally waived its immunity." *Id.* (citing *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226, 1234 (10th Cir.1999)). "[S]tate waived immunity by removing case to federal court." *Id.* (citing *Newfield House, Inc. v. Massachusetts Dep't. of Pub. Welfare*, 651 F.2d 32, 36 n. 3 (1st Cir.1981)). Other Circuits, as well, are in accord with the Ninth on this issue. The Tenth Circuit has held that the Eleventh Amendment defense was waived when a defendant state removed a case to federal court. *Gallagher v. Continental Ins. Co.*, 502 F.2d 827, 830 (10th Cir.1974) (noting that the "state ... joined in removal petition and the resistance to plaintiffs' remand motion"). "By removing the action, answering the complaint, counterclaiming, and opposing a motion to remand on immunity

grounds the [state] has clearly and unequivocally waived its Eleventh Amendment immunity to suit ...." *Candela Corp. v. Regents of the Univ. of Cal.*, 976 F.Supp. 90, 92–93 (D.Mass.1997).

In the instant case Respondent Tribe joined in the removal to federal court, answered the complaint, and opposed a motion to remand on immunity grounds. If the Tribe were a state, that would clearly be sufficient to waive the state's sovereign immunity. We see no reason to treat the Tribe differently. As such, we treat the Tribes' actions as amounting to a clear and unequivocal waiver of immunity in this Court. Thus we find that the Respondent Tribe's joinder in removal of this case to this Court, together with its voluntary assumption of the contractual and judicial terms of the Humboldt Decree in purchasing the instant water rights, and in ratifying that initial waiver with over fifty years of actions demonstrating acquiescence to the Humboldt Decree, to constitute a multiple waiver of its tribal immunity. Therefore, this Court possesses subject matter jurisdiction to hear this matter.

However, we note that if there has been no waiver of tribal immunity in this case, the proper remedy is not the dismissal that the Tribe requests, but remand to state court. *Manufacturers Nat. Bank v. Brownstown Square Apartments*, 491 F.Supp. 206, 208–10 (E.D.Mich.1980) ("We do not think that Section 1442(a)(1) contemplates a procedure whereby the Secretary can remove a case from a state court of competent jurisdiction and subsequently obtain dismissal on the basis that the federal court to which removal is effected is not a court of competent jurisdiction....."). "The well-advised defendant ... will foresee the likely outcome of an unwarranted removal—a swift and non-reviewable remand order, see 28 U.S.C. §§ 1447(c),(d)...." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760, 67 U.S.L.W. 4315, 4318 (1999) (alterations in original). In *Ruhrgas* the defendant removed the case to fed-

eral court and then asked the court to dismiss for lack of personal jurisdiction. The Supreme Court held that the proper decision was for the district court to remand the case to state court, instead of dismissing it, so that the state court would consider the complex questions of state law affecting personal jurisdiction. *See also California Mother Infant Program v. California*, 41 F.Supp.2d at 1125–26 (S.D.Cal.1999); *Simmons v. California*, 740 F.Supp. 781, 785 (E.D.Cal.1990); *Kelly v. California*, 687 F.Supp. 1494 (D.Nev. 1988), aff'd, 880 F.2d 416 (9th Cir.1989); *Stephans v. Nevada*, 685 F.Supp. 217, 220 (D.Nev.1988). However, since we have found that tribal immunity was waived we do not need to remand on this basis.

We hold therefore that we have subject matter jurisdiction over this action.

### III. The Doctrine of Abstention

The final threshold for this Court to cross in deciding whether to exercise its jurisdiction over the matter at hand is the doctrine of abstention. Petitioners argue that this Court, even if it finds that it has subject matter jurisdiction over these claims, should not exercise its jurisdiction due to the doctrines of abstention and comity, and should thus remand the case to the Sixth Judicial District Court of the State of Nevada.[1]

"[A]bstention is an extraordinary and narrow exception to the virtually unflagging obligation of federal courts to exercise the jurisdiction given them." *In re Otter Tail Power Co.*, 116 F.3d 1207, 1215 (8th Cir.1997) (citations omitted). "The United States Supreme Court has identified several circumstances in which the considerations of federalism, comity, and judicial administration ... may justify overriding the strong presumption in favor of exercising federal jurisdiction." *Id.* (alterations in original) (citations omitted). The Supreme Court has identified four general categories of cases where absten-

tion is appropriate: (1) *Pullman* abstention, (2) *Younger* abstention, (3) *Burford* abstention, and (4) *Colorado River* abstention. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14–15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Each of these will be discussed in turn.

### A. Pullman Abstention

■ *Pullman* abstention applies where controlling state law is unclear and a state court's clarification of that state law could make a federal court's federal constitutional decision unnecessary. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941). "If there was no warrant in state law for the [Texas Railroad] Commission's assumption of authority there is an end of the litigation; the constitutional issue does not arise." *Id.* To determine whether *Pullman* abstention is appropriate, the district court must apply a three-prong test: the court should abstain when (1) the complaint touches on a sensitive area of social policy into which the federal courts ought not to enter unless no alternative to its adjudication is open; (2) such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy; and (3) the possibly determinative issue of state law is unclear. *Badham v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 721 F.2d 1170, 1172 (9th Cir.1983). *Pullman* abstention is inapplicable in the instant case because we are not faced with any questions of state law that would eliminate any federal constitutional questions if resolved in a certain way.

### B. Younger Abstention

■ *Younger* abstention is implicated where federal jurisdiction has been invoked for the purpose of staying or enjoining state judicial proceedings. *Younger v. Harris*, 401 U.S. 37, 41, 91 S.Ct. 746, 27

1. The doctrine of comity, the judicial effect the courts of one jurisdiction give to another jurisdiction, not as a matter of obligation, but out of deference and respect, is included and subsumed in our analysis of the abstention doctrine.

L.Ed.2d 669 (1971). Younger "and its progeny espouse a strong federal policy against federal court interference with pending state judicial proceedings, absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116, (1982). "The policy rests on notions of comity and respect for state functions and was born of the concern that federal court injunctions might unduly hamper state criminal prosecutions." *Champion Int'l Corp. v. Brown,* 731 F.2d 1406, 1408 (9th Cir.1984) (citing *Younger,* 401 U.S. at 44, 91 S.Ct. 746). *Younger* abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. *Younger,* 401 U.S. at 37, 91 S.Ct. 746.

Although Younger involved criminal proceedings, the Supreme Court has stated clearly that concerns of comity and federalism counsel restraint in civil proceedings as well, when important state interests are at stake. *Ohio Civil Rights Comm. v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *see also Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (holding that "[t]he basic concern—that threat to our federal system posed by displacement of state courts by those of the National Government—is also fully applicable to civil proceedings in which important state interests are involved."). Civil-*Younger* abstention has generally been limited to the situation where a party seeks to invoke federal jurisdiction for the purpose of "restraining state proceedings or invalidating a state law." *United States v. Adair,* 723 F.2d 1394, 1402 n. 5 (9th Cir.1983) (considering whether a federal district court had jurisdiction over the declaration of Indian water rights on a reservation). *See also Fresh Int'l Corp. v. Agricultural Labor Relations Bd.,* 805 F.2d 1353, 1360 (9th Cir.1986) (civil-*Younger* abstention is warranted for important state interests of peaceful collective bargaining, promoting fair employment practices, teacher discipline and police integrity); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604–05, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (abstention warranted in state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films); *Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (federal court should have abstained in light of pending state court proceedings to collect fraudulently obtained welfare benefits; state's interest in protecting the fiscal integrity of its public assistance programs is important interest).

In *Dayton,* the Supreme Court confirmed that Younger principles also apply to pending state administrative proceedings that involve important state interests. *Dayton,* 477 U.S. at 627, 106 S.Ct. 2718. *See also Middlesex,* 457 U.S. at 433–34, 102 S.Ct. 2515 (abstaining in favor of bar disciplinary proceedings because Court found them to be "judicial in nature"); *Williams v. Red Bank Bd. of Educ.,* 662 F.2d 1008, 1016–17 (3rd Cir.1981) (abstaining in favor of administrative proceedings).

The Ninth Circuit has held that *Younger* abstention is proper where: "(1) there are ongoing state judicial proceedings; (2) that implicate important state interests; and (3) there is an adequate opportunity in the state proceedings to raise federal questions." *Martinez v. Newport Beach City,* 125 F.3d 777, 781 (9th Cir.1997). While it is true that the continued administration of the Humboldt Decree remains in the Sixth Judicial District Court of Nevada, the instant action involving the amended order to show cause has been completely removed to this Court. *See* Order (# 33) filed on June 3, 1999. No other part of the administration or enforcement of the Humboldt Decree is before this Court, and thus the "ongoing state judicial proceedings" required for *Younger* abstention are absent in the instant case. Accordingly, there is no need for us to analyze the two remaining factors necessary for *Younger*

abstention, as the absence of the first factor makes it inapplicable in this case.

## C. Burford Abstention

■ *Burford* abstention is appropriate where "timely and adequate state-court review is available" and when (1) "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or when (2) "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 360–61, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 332–34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)).

The threshold analysis in *Burford* abstention is whether timely and adequate state-court review is available. *Id.* at 361, 109 S.Ct. 2506. Here, timely and adequate state-court review continues to be available to the litigants in the Sixth Judicial District Court of the State of Nevada.

The Ninth Circuit requires that each of the three following factors be present for *Burford* abstention to apply: (1) that the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) that federal review might disrupt state efforts to establish a coherent policy. *Tucker v. First Md. Sav. & Loan Inc.*, 942 F.2d 1401, 1405 (9th Cir.1991). We will analyze each of these factors in turn.

### 1. The State Has Concentrated Suits Involving Local Issue in a Particular Court

In *Burford,* the Court found it dispositive that Texas had established a complex administrative scheme to address issues of oil well drilling, supervised by an expert agency, the Railroad Commission, and that all direct review of the commission's or-

ders were consolidated in one state district court. *Burford,* 319 U.S. at 326, 63 S.Ct. 1098. In the instant case we also have a complex administrative scheme in the Nevada Water Laws, codified at NRS 532.010–541.420, supervised by the State Engineer, with the Water Commissioners of the one state court responsible for administering and enforcing the Humboldt Decree. This is almost exactly analogous to the scheme in *Burford.* Thus this factor weighs in favor of the application of *Burford* abstention.

### 2. Federal Issues Are Easily Separable from Complex State Law Issues with Which State Courts Have Special Competence

In the instant case the state law issues are neither unsettled nor complex. There is no particular Nevada state statute at issue, nor currently developing water law that will affect rights under the Humboldt Decree. Both Nevada water statutes and the Humboldt Decree Adjudication are long and well-established, unambiguous legal doctrines. The issue in the case at hand is whether a state can enforce the terms of an adjudicated water decree and state water law on an Indian Reservation. No questions bearing on unsettled state policy are presented for decision. Nor are the federal claims "entangled in a skein of state law that must be untangled before the federal case can proceed." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Thus, since the state issues are not complex here, nor difficult to separate from the federal issues involved, this factor weighs against the application of *Burford* abstention.

### 3. Federal Review Will Not Disrupt State Efforts to Establish a Coherent Policy

As previously stated, Nevada water law and the Humboldt Decree are long-established and unambiguous, and the only potential disruption of Nevada water policy that could conceivably be caused by federal review would be inconsistent enforce-

ment of the terms of the Humboldt Decree and of Nevada Water Law. But this potential disruption is unlikely because, in adjudicating water rights, federal courts must look to state law. *California v. United States*, 438 U.S. at 653, 98 S.Ct. 2985. "There is no body of Federal water law. . . . What rights the United States has and the extent thereof must be determined by the law of Nevada." *United States v. Hennen*, 300 F.Supp. 256, 260 (D.Nev. 1968) (citations omitted). Federal review might possibly create conflict with enforcement of state law, but the mere potential for conflict, without more, does not warrant abstention. *Colorado River*, 424 U.S. at 815–16, 96 S.Ct. 1236. Federal district courts are often called upon to construe the state law of the jurisdiction in which they sit. As such, it is assumed these federal courts are competent to accomplish this construction of state law without interference with or derogation of the subject state's coherent policies. Due to the well-settled state of Nevada water law and policy and the requirement that this Court apply Nevada water law to the case sub judice, this factor weighs against the application of Burford abstention.

Under the Ninth Circuit test for *Burford* abstention, we have only one of the three necessary factors weighing in favor of abstention and two weighing against, and thus for the foregoing reasons *Burford* abstention is not applicable in this case.

### D. Colorado River Abstention

■ The three traditional categories of abstention delineated above are based on weighty considerations of federal/state relations. *American Int'l, Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir.1988). In enunciating *Colorado River* abstention, however, the Supreme Court held that, in certain exceptional circumstances, dismissal of a federal action based on the presence of a concurrent state proceeding is appropriate for reasons

of "wise judicial administration." *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. 1236. In *Colorado River*, the Supreme Court recognized four factors, secondary to the McCarran Amendment[2] policy favoring state court adjudication of water rights, which must be weighed in determining whether such exceptional circumstances exist: (1) the clear federal policy of avoidance of piecemeal adjudication of water rights in a river system, (2) assumption by the state court of jurisdiction over the *res* or property involving extensive rights governed by state law, (3) the geographic inconvenience of the federal forum, and (4) the order in which jurisdiction was obtained by the concurrent state and federal fora. *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927 (citing *Colorado River*, 424 U.S. at 819–20, 96 S.Ct. 1236). The Supreme Court in *Moses H. Cone* added two more factors: (5) whether federal law or state law provides the rule of decision on the merits, and (6) the adequacy of the state-court proceedings to protect the rights of the parties. *Id.* at 23, 26, 103 S.Ct. 927.

These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a "mechanical checklist," with the balance heavily weighted in favor of the exercise of jurisdiction. *Id.* at 16, 103 S.Ct. 927. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case. *Id.* The Ninth Circuit has held that "forum shopping is another appropriate factor to consider," and that the McCarran Amendment should be considered in a separate, more primary, analysis. *Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir.1990). *See also United States v. Adair*, 723 F.2d 1394, 1407 n. 12 (9th Cir. 1983) ("In *Colorado River*, the Supreme Court recognized four secondary factors, less important than the McCarran Amendment policy, that also favored dismissal.").

**2.** 43 U.S.C. 666 (waiver of United States sovereign immunity and consent to be joined as a defendant in state court proceedings for the adjudication and administration of water rights).

See Part III. D. 8., *infra.*

## 1. Avoidance of Piecemeal Adjudication of Water Rights Between State and Federal Courts

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American Int'l, Underwriters,* 843 F.2d at 1258. In the instant case the amended order to show cause was removed to this Court leaving no parallel proceedings at the state level that are duplicative. While it is true that the continued administration of the Humboldt Decree remains in the Sixth Judicial District Court of Nevada, the instant action involving the amended order to show cause, has been completely removed to this Court. *See* Order (# 33) filed on June 3, 1999. No other part of the administration or enforcement of the Humboldt Decree is before this Court, and thus the parallel proceedings that constitute the "piecemeal litigation" contemplated in *Colorado River* are not present here. Accordingly this factor weighs in favor of the exercise of federal jurisdiction.

## 2. State Court Jurisdiction over Res or Property Involving Rights Governed by State Law

In proceeding *in rem* or quasi *in rem,* the forum first assuming custody of the property at issue has exclusive jurisdiction to proceed. *Donovan v. Dallas,* 377 U.S. 408, 411, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). The fact that the Sixth Judicial District Court of Nevada controls the *res* in the continuing administration of the Humboldt Decree is irrelevant here, because that was not removed and thus is not before this court. *See* Order (# 33) filed on June 3, 1999. The action removed to this Court—the amended order to show cause—is an *in personam* action without a *res,* and thus this factor is inapplicable in our analysis. *See* Part II. A., *supra.*

## 3. Geographic Inconvenience of the Federal Forum

In the instant case this factor seems to be a wash. The location of this Court in Reno is closer to Petitioner State Engineer's offices in Carson City and to the offices of counsel for Respondent U.S., the U.S. Attorney, whose office is here in Reno. But this seems to be equally counterbalanced by the fact that the Court of the Sixth Judicial District in Winnemucca is much closer in location to both Petitioner Water Commissioners, and Respondent Tribe.

## 4. Order in Which Jurisdiction Was Obtained by the Concurrent State and Federal Forums

"[T]his factor must be applied in a pragmatic, flexible manner, so the priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions." *American Int'l. Underwriters,* 843 F.2d at 1258. Although the Nevada state action was filed first in the instant case, the notice of removal was filed less than two months later and the Sixth Judicial District Court had made no substantial progress on the litigation at that time. As such, this factor weighs in favor of the exercise of federal jurisdiction.

## 5. Federal Law or State Law Provides the Rule of Decision on the Merits

The Ninth Circuit has affirmed a district court decision to limit its determinations to the matter of "ordering priority among reserved water rights arising under federal law" and to remand all other issues to state adjudication. *Adair,* 723 F.2d at 1406 ("In so limiting its exercise of jurisdiction, the district court . . . ruled only on those questions involving application of the federal Indian law doctrine of reserve water rights."). In the instant case we limited the removed action to only the amended order to show cause. *See* Order (# 33) filed on June 3, 1999. No other part of the administration or enforcement of the Humboldt Decree under Nevada state water law is before this Court. While it is true that this Court must apply the terms of the Humboldt Decree, and any applicable Nevada water statutes in coming to a decision on the merits, we also must consider the weighty federal law issues of Indian

and U.S. sovereign immunity. Due to the presence of both state and federal law issues, this factor also seems to tilt toward the exercise of federal jurisdiction.

### 6. Adequacy of the State–Court Proceedings to Protect the Litigant's Rights

"Under the rules governing the *Colorado River* doctrine, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the grant of a stay." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir.1993) ("When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."). In the instant case, we have concluded both courts have concurrent jurisdiction in this matter, and thus both courts have the ability for complete and prompt resolution of the issues between the parties. Therefore, this factor is neutral in our analysis.

### 7. Forum Shopping

"In the *Colorado River* context, the Ninth Circuit has held that forum shopping weighs in favor of a stay [of federal court action] when the party opposing the stay seeks to avoid an adverse ruling made by the state court or to gain a tactical advantage from the application of federal court rules." *Madonna*, 914 F.2d at 1371. In applying this factor to the instant case, we must determine if the U.S./Tribe sought to avoid an adverse ruling by the state court or to gain a tactical advantage from the application of federal court rules. Petitioners do not allege that Respondents are engaged in forum shopping in seeking to have the proceedings heard by this Court, nor is there any evidence that Respondents will avoid a harsher state court ruling or receive rules which are more friendly to their position in this Court. As such, we conclude that forum shopping is not a factor in this matter.

### 8. McCarran Amendment

Section 666 of Title 43 of the United States Code, known as the McCarran Amendment, was passed July 10, 1952, amending Departments of State, Justice, Commerce and the Judiciary Appropriations Act of 1953. It provides in pertinent part:

> (a) Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to any such suit.

43 U.S.C. § 666.

The purpose of this section, in which the United States consents to be sued in any court in actions involving the adjudication and administration of water rights, was to facilitate state adjudication of stream systems that contained both reserved and appropriated rights of the United States and Indian tribes. *Colorado River*, 424 U.S. at 809, 96 S.Ct. 1236. Petitioners do not seek "adjudication of rights to the use of water." Rather, they seek to hold the Respondents in contempt, in order to enforce the Humboldt Decree. The Petitioners seek to compel the Respondents to pay assessment fees, and to provide access to state officers for inspections of the water diversions on tribal land. The only part of the McCarran Amendment that is potentially applicable, therefore, is subsection (a)(2), "for administration of such rights." 43 U.S.C. § 666. The case law considering the sweep of the McCarran Amendment as it relates to the "administration of rights" is meager to say the least. Case law specifically analyzing this subsection as it relates to enforcement actions, such as we have in the instant case, is almost nonexistent. *See Barcellos & Wolfsen Inc. v.*

*Westlands Water Dist.,* 491 F.Supp. 263, 266 (E.D.Cal.1980).

There are a number of points relevant to our analysis which are clearly established by federal cases interpreting the McCarran Amendment. The disjunctive "or" between subsections (a)(1) and (a)(2) refers to the rights adjudicated in (a)(1), and thus the waiver of immunity for "administration of rights" can only take place after a general stream determination under subsection (a)(1) has been made. *South Delta Water Agency v. United States,* 767 F.2d 531, 541 (9th Cir.1985). In its capacity as trustee of Indian lands and water rights, the United States can be joined as a defendant in state court to determine water rights of Indian tribes. *New Mexico ex rel. Reynolds v. United States,* 408 F.Supp. 1029, 1029 (D.N.M.1975). Under the McCarran Amendment, jurisdiction of state courts to undertake water rights adjudication is applicable to all federally reserved rights—including those waters reserved for use by Indian Tribes. *Jicarilla Apache Tribe v. United States,* 601 F.2d 1116, 1135 (10th Cir.1979). Private actions to determine water rights between a limited number of parties are not "suits for the adjudication of rights to the use of water." Thus when all water rights claimants have not been joined and the relief sought does not include the establishment of the rights of all claimants to all of the water in the system, subsection (a)(1) of the McCarran Amendment does not provide a waiver of sovereign immunity. *Dugan v. Rank,* 372 U.S. 609, 618, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

The only federal case to clearly analyze § 666(a)(2) is a decision of this Court, *United States v. Hennen,* 300 F.Supp. 256, 263 (D.Nev.1968):

> Once a legal proceeding within the purview of 666(a)(1), determining relative rights of claimants to the waters of a stream system or other source, has been had and a decree adjudicating such rights entered, Congress has given its consent to any suit properly commenced for the administration of such rights under 666(a)(2).

> To administer a decree is to execute it, to enforce its provisions, to resolve conflicts as to its meaning, to construe and to interpret its language. Once there has been such an adjudication and a decree entered, then one or more persons who hold adjudicated water rights can, within the framework of 666(a)(2), commence among others such actions as described above, subjecting the United States, in a proper case, to the judgments, orders and decrees of the court having jurisdiction.... The sovereign immunity of the United States was waived and the Government is subject to the jurisdiction of the State Courts.

The Ninth Circuit adopted this holding in *Hennen* in *South Delta Water Agency v. United States,* 767 F.2d 531, 541 (9th Cir. 1985). *See also State of Wyoming v. United States,* 933 F.Supp. 1030, 1036 (D.Wyo. 1996) (quoting the above passage from *Hennen,* 300 F.Supp. at 263). The Court in *Hennen* found that an action initiated by the United States seeking to enjoin the enforcement of an order of the Nevada State Engineer fell within the subsection (a)(2) "administration clause" of the McCarran Amendment and not within the subsection (a)(1) "adjudication clause." 300 F.Supp. at 261. This Court found that the United States had waived its sovereign immunity from suit in enforcement actions under the "administration clause," by enacting subsection (a)(2) of the McCarran Amendment.

The similarity of the instant case to *Hennen* is remarkable. The federal water rights at issue in *Hennen* were purchased by the United States and were subject to a decree adjudicated prior to purchase, similar to the Respondent Tribe's water rights held in trust by the United States. The issue in *Hennen* was the right of enforcement of an order of the State Engineer of Nevada, just as in the instant case. We follow our earlier case, and find that the enforcement action in the instant case falls within the "administration clause" of the McCarran Amendment, giving the Sixth

Judicial District Court of Nevada jurisdiction over the United States on the Tribe's behalf.

Although no court has specifically addressed whether the subsection (a)(2) "administration clause" grants a state court jurisdiction over the Tribe itself, in an enforcement action, the Supreme Court has noted that "any judgment against the United States, as trustee for the Indians, would ordinarily be binding on the Indians." *Arizona* v. *San Carlos Apache Tribe*, 463 U.S. 545, 566 n. 17, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). Applying this reasoning to the modification of an existing equitable decree, the Ninth Circuit emphasized that "[t]o hold at this stage that tribal immunity blocks modification of an equitable decree would impermissibly violate a central tenet of equity jurisprudence, that of flexible decrees." *United States v. Oregon*, 657 F.2d at 1015. As courts have found the subsection (a)(1) "adjudication clause" to grant state courts jurisdiction over Indian tribes,[3] it follows logically that these same courts should have jurisdiction to administer, under subsection (a)(2), the rights that were granted under the adjudication clause. For these reasons we conclude that the subsection (a)(2) "administration clause" grants the Sixth Judicial District Court of Nevada jurisdiction over the Tribe in an enforcement action.

However, the McCarran Amendment "does no more than create concurrent jurisdiction" between state and federal fora. *National Audubon Soc. v. Department of Water & Power of L.A.*, 496 F.Supp. 499, 504 (E.D.Cal.1980). "It is concluded from the language of Section 666 standing alone, and also in connection with its legislative history, that Congress did not intend to foreclose the jurisdiction of the federal courts, either in the first instance or by way of removal, over suits in which the United States was a party defendant, or a party plaintiff, where such jurisdiction

would exist under other federal laws, sovereignty being waived." *In re Green River Drainage*, 147 F.Supp. 127, 138 (D.Utah 1956).

Our McCarran Amendment analysis clearly establishes that the Sixth Judicial District Court of Nevada has jurisdiction over this matter, concurrent with the jurisdiction of this Court. As such, this Court's decision in *Hennen* clearly emphasizes that this factor weighs heavily in favor of the state decree court retaining jurisdiction over its enforcement actions.

The six factors enunciated by the Supreme Court and the additional seventh utilized by the Ninth Circuit, which we analyzed above, must now be weighed "as part of a balancing process" to determine if the "exceptional circumstances" required for *Colorado River* abstention are present. *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. 1236.

Factors weighing in favor of the exercise of federal jurisdiction are: the policy of avoidance of piecemeal adjudication, the order in which jurisdiction was obtained, and whether federal law or state law provides the rule of decision on the merits. We found four factors to be neutral or inapplicable and only the McCarran Amendment to favor abstention.

These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a "mechanical checklist," with the balance heavily weighted in favor of the exercise of jurisdiction. *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927. Although the Ninth Circuit holds that the McCarran Amendment factor is to be weighed more heavily than each of the other individual factors, *Madonna*, 914 F.2d at 1368, we find the four factors favoring the exercise of federal jurisdiction to more than counterbalance the effect of the McCarran Amendment. If this, in and of itself, is not conclusive in our determination, the application of the

**3.** *See Jicarilla Apache Tribe*, 601 F.2d at 1135; *Colorado River*, 424 U.S. at 801, 96 S.Ct. 1236.

Supreme Court's "heavily weighted" test, defined above, requires us to conclude that *Colorado River* abstention is not applicable in this matter.

In our analysis of the four general categories of abstention enunciated by the Supreme Court, we find that none apply in the instant case. Thus we conclude that we must exercise our jurisdiction in this matter.

## CONCLUSION

We therefore find that Respondent's removal is proper pursuant to § 1442. We further find that this Court has subject matter jurisdiction over this action, concluding that Nevada's sovereign state interests and Eleventh Amendment immunity and the Tribe's Indian immunity are not a bar to this Court's jurisdiction. And finally, we find that none of the four abstention doctrines enunciated by the Supreme Court require us to decline to exercise our jurisdiction.

*IT IS, THEREFORE, HEREBY ORDERED THAT* Petitioners' motion to remand (# 6A) is *DENIED.*

*IT IS FURTHER ORDERED THAT* Petitioners' amended motion to remand (# 16) is *DENIED.*