**Beth A. BODI, Plaintiff,**

**v.**

**SHINGLE SPRINGS BAND OF MI-WOK INDIANS; and Does 1 through 15, inclusive, Defendants.**

**No. CIV. S–13–1044 LKK/CKD.**

United States District Court, E.D. California.

Signed May 13, 2014.

Filed May 14, 2014.

David Nied, Wendy L. Hillger, AD Astra Law Group, LLP, Katy M. Young, Nossaman LLP, San Francisco, CA, for Plaintiff.

Paula M. Yost, Ian R. Barker, Sandra R. McCandless, Dentons U.S., LLP, San Francisco, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

This matter concerns an employment law dispute between plaintiff Beth A. Bodi and defendants Shingle Springs Band of Miwok Indians ("Tribe"), Shingle Springs Tribal Health Program ("Health Program"), Shingle Springs Tribal Health Board ("Health Board"), and individual defendant Brenda Adams, a Tribe member. The gravamen of plaintiff's Second Amended Complaint is that she was wrongfully terminated due to her illness, in violation of state and federal law, includ-

ing the federal Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"). The action was initially filed in state court; defendants removed, and now move to dismiss under Fed.R.Civ.P. 12(b)(1), asserting lack of subject matter jurisdiction based on tribal sovereign immunity.

Having considered the matter, the court will grant defendants' motion to dismiss in part and deny it in part, for the reasons set forth below.

## I. BACKGROUND

### A. Factual Background

Plaintiff's Second Amended Complaint ("SAC," ECF No. 17) alleges as follows.

Defendant Tribe is a federally-registered and recognized Indian tribe. (SAC ¶ 2.) Plaintiff is a Tribe member. (SAC ¶ 18.)

Defendant Health Program operates the Shingle Springs Tribal Health Clinic. Defendant Health Board is responsible for governing the Health Clinic; the Health Board's members, in turn, are appointed by the Shingle Springs Rancheria Tribal Council, the Tribe's governing body ("Tribal Council"). (SAC ¶ 6.)

From February 1997 through August 3, 2012, plaintiff was employed primarily by the Health Program; for approximately the last eleven of these years, she was its Executive Director, a capacity in which she reported to the Health Board. (SAC ¶¶ 18, 20, 21.)

In June 2011, plaintiff was diagnosed with cancer. She alleges that prior to starting chemotherapy, she met with both the Health Board's chairperson and the Tribe's Human Resources Director. At this meeting, plaintiff indicated that she wanted to take unpaid, job-protected leave under the FMLA; she was told that she need not rely on the FMLA because she

was in no danger of losing her job, and that she could take off as much time as she wanted. Plaintiff's chemotherapy regime successfully concluded six months later, in December 2011. (SAC ¶¶ 23–25, 28.)

In mid–2012, plaintiff was given a performance evaluation, her first since 2000. The written evaluation was prepared by a Health Board member, and signed by both another Health Board member and the Tribe's Human Resources Director. Plaintiff was advised that the evaluation covered the April 2011–April 2012 period (*i.e.,* a period encompassing the time during which plaintiff was diagnosed and treated for cancer). She was given an overall rank of 2 (on a scale of 1 to 5, with 5 being the most favorable); according to the evaluation, this level meant, "Serious effort is needed to improve performance." (SAC ¶¶ 30–33, 37.)

On June 28, 2012, shortly after she received this evaluation, plaintiff broke her ankle at work; the injury was extensive enough to require corrective surgery. Plaintiff's physicians placed her on temporary disability leave through July 24, 2012; her orthopedic surgeon later ordered her to remain off work till August 6, 2012. She also applied for FMLA leave, which she is informed and believes was in effect starting June 28, 2012. (SAC ¶¶ 40–42.)

By letter dated August 1, 2012, plaintiff was informed that she was "hereby terminated from [her] employment with the Shingle Springs Band of Miwok Indians, Shingle Springs Tribal Health Program, effective immediately." The letter stated that she was being terminated "for inadequate performance" because of alleged deficiencies occurring "during the last several months." The letter also noted that the termination had "nothing to do with your request and use of Family Medical Leave. All actions referenced above occurred prior to your request for Family Medical

Leave and the Board's decision to terminate you from employment is strictly a business decision based on your inadequate performance, especially in light of the Program's financial crisis." (SAC ¶¶ 44–47.)

Plaintiff believes she was terminated due to her objection to the termination of the Health Program's Medical Director (who had complained about patient loads), her own complaints about patient loads, her calling of attention to troubling accounting irregularities at the Health Program, and her objection to the Tribe moving its Office of Tribal Administration to the Health Clinic. (SAC ¶¶ 53–56.)

Around January 28, 2013, plaintiff was hired as Executive Assistant to the Tribal Council Chairman, a position that paid much less than her previous position as the Health Program's Executive Director. (SAC ¶ 57.) On March 19, 2013, plaintiff sent defendants a communication complaining about her termination from the Health Program and expressing her willingness to seek redress in state court. Two days later, she was placed on administrative leave, and approximately three weeks later, she was terminated. (SAC ¶ 58.)

### B. Procedural Background

On April 22, 2013, plaintiff commenced this action in the Superior Court of California for the County of El Dorado. (Notice of Removal, ECF No. 1.)

On May 28, 2013, defendants removed to this court, asserting federal question jurisdiction under 28 U.S.C § 1331. (Id.)

On July 12, 2013, plaintiff filed the operative Second Amended Complaint, which pleads claims under the FMLA and various state laws.

On August 5, 2013, defendants filed the instant motion to dismiss. The basis of defendants' motion is that the Tribe, as a federally-recognized tribal entity, is immune from suit, and that the other defendants are similarly immune due to their relationships with the Tribe. In opposition, plaintiff argues that Congress abrogated tribal sovereign immunity in enacting the FMLA; alternatively, she argues that defendants have waived immunity through their actions.

The matter came on for hearing on March 3, 2014. The following day, the parties filed a joint stipulation (i) requesting that the court stay this matter pending the outcome of settlement discussions, and (ii) pledging to file a status report with the court no later than May 1, 2014. (ECF No. 49.) The court entered the parties' requested order. (ECF No. 50.) On May 1, 2014, the parties notified the court that they were unable to reach a settlement, and requested that the court enter its ruling on the dismissal motion. (ECF No. 51.)

### II. STANDARD

█ "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir.1989).

█ "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). "The burden of establishing subject matter jurisdiction rests on the party asserting that the court has jurisdiction." *In re Wilshire Courtyard,* 729 F.3d 1279, 1284 (9th Cir.2013) (citing *McNutt v. GM Acceptance Corp.,* 298 U.S. 178, 182–83, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). A defendant may raise the defense of lack of subject-matter jurisdiction by motion pursuant to Fed.R.Civ.P. 12(b)(1).

■ "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

■ In considering a facial attack, the court "determine[s] whether the complaint alleges 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' " *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir.2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

■ "If the defendant instead makes a factual attack on subject matter jurisdiction, the defendant may introduce testimony, affidavits, or other evidence" and "[u]nder these circumstances, 'no presumptive truthfulness attaches to plaintiff's allegations.' " *Terenkian*, 694 F.3d at 1131 (quoting *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir.2009)). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone*, 373 F.3d at 1039. However, in the absence of a full-fledged evidentiary hearing, disputes as to the pertinent facts are viewed in the light most favorable to the non-moving party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir.1996).

■ An action should not be dismissed for lack of subject matter jurisdiction without giving the plaintiff an opportunity to amend unless it is clear that the jurisdictional deficiency cannot be cured by amendment. *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1216 (9th Cir. 1980).

Defendants herein advance a facial attack regarding the absence of subject matter jurisdiction, contending that the court's jurisdiction fails as a matter of law. They also attack subject matter jurisdiction on factual grounds, and have submitted extrinsic evidence in support of their motion.

## III. ANALYSIS

### A. Request for Judicial Notice

■ Defendants request that the court take judicial notice of 78 Fed. Reg. 26384–26389 (May 6, 2013), a notice entitled "Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs." According to a summary therein, this notice "publishes the current list of 566 tribal entities recognized and eligible for funding and services .…" The list includes "Shingle Springs Band of Miwok Indians, Shingle Springs Rancheria (Verona Tract), California."

A fact may be judicially noticed if it is "not subject to reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b).

As the Federal Register is a source "whose accuracy cannot reasonably be questioned," the court will take judicial notice that the Tribe is recognized as a tribal entity by the United States government.

### B. Background law re: tribal sovereign immunity

■ "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueb-*

*lo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). "Absent congressional or tribal consent to suit, state and federal courts have no jurisdiction over Indian tribes; only consent gives the courts the jurisdictional authority to adjudicate claims raised by or against tribal defendants." *Pan Am. Co. v. Sycuan Band of Mission Indians,* 884 F.2d 416, 418 (9th Cir.1989). "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,* 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).

The court would ordinarily turn to the question of whether, in enacting the FMLA, Congress authorized suit against Indian tribes, a topic as yet unaddressed by the Ninth Circuit. But this case's unusual procedural posture instead raises the issue of waiver.

### C. Did the Tribe waive sovereign immunity by removing this action to federal court?

On January 9, 2014, the court issued an order directing the parties to brief the following issues:

> Does an Indian tribe's removal of an action to federal court constitute a waiver of sovereign immunity? How is the analysis affected by the fact that the plaintiff in the underlying action was a tribe member? (Order, ECF No. 40.)

The parties filed opening briefs on January 23, 2014 (ECF Nos. 44, 45), and replies on February 6, 2014 (ECF Nos. 46, 47).

As to the second question, both parties agree that "[c]ase law bearing on claims brought against a Tribe or tribal entity by a member of the Tribe have not touched on the issue of whether or not it makes a difference that the claimant is a Tribe member." (Plaintiff's Opening Supple-

mental Brief 4, ECF No. 45.) Based on its research, the court concludes that the waiver issue is unaffected by plaintiff's status as a Tribe member. Accordingly, the court will address only the first question: whether tribes waive their sovereign immunity through removal to federal court.

Defendants maintain that "appearing in a federal forum solely to advance a jurisdictional objection grounded in federal law—namely, to challenge the existence of any court's jurisdiction to adjudicate the dispute on the basis of tribal sovereign immunity, as the Tribe proceeded here—certainly does not express the Tribe's unequivocal consent to the federal court's adjudication of the dispute required for a waiver of that immunity." (Defendant's Opening Supplemental Brief 1, ECF No. 44.)

The Ninth Circuit has, as yet, not addressed the issue, but it has been reached by at least three district courts in this Circuit. They have reached different conclusions.

In *State Eng'r v. S. Fork Band of the Te–Moak Tribe of W. Shoshone Indians,* 66 F.Supp.2d 1163, 1173 (D.Nev.1999) (Reed, J.), a Nevada district court found that removal to federal court constituted a "clear and unequivocal waiver" of tribal immunity. Much of the Nevada court's reasoning rests on an analogy between tribal sovereign immunity and state sovereign immunity, and the order relies heavily on cases finding state waiver of sovereign immunity based on removal. Two other points about the case merit mention. First (as defendants herein are at pains to point out), the tribe in *State Eng'r,* by filing an answer, took affirmative litigation steps in federal court beyond removal; by contrast, defendant Tribe herein has to date only removed the case. Neverthe-

less, the Nevada court does not appear to have based its decision on that factor, finding only that "the Respondent Tribe's joinder in removal of this case to this Court ... constitute[d] a ... waiver of its tribal immunity." *Id.* at 1173. The second point is that, in the Nevada court's view, if the tribe did not waive immunity, "the proper remedy [was] not the dismissal that the [t]ribe requests, but remand to state court." *Id.* While the order cites several district court decisions for this proposition, as well as *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (holding that district courts may dismiss a removed case for lack of personal jurisdiction without first ruling on the issue of subject matter jurisdiction), these cases do not appear to speak directly to the proposition advanced. Moreover, while 28 U.S.C. § 1447(c) provides, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded," the Ninth Circuit has held that where remand would be futile, a district court may simply dismiss the case. *Bell v. City of Kellogg,* 922 F.2d 1418, 1424–25 (9th Cir.1991). In other words, there does not appear to be supporting authority for this dicta regarding remand.

In the next decision, *Sonoma Falls Developers, LLC v. Dry Creek Rancheria Band of Pomo Indians,* No. C–01–4125 VRW, 2002 WL 34727095, 2002 U.S. Dist. LEXIS 28087 (N.D.Cal. Dec. 26, 2002) (Walker, J.), the district court concluded that removal did not constitute a waiver of tribal immunity. That court instead determined that "at least in the context of finding waiver, Indian tribes are more akin to foreign sovereigns than to states," *id.,* and on this basis, declined to find waiver.

The court in *Ingrassia v. Chicken Ranch Bingo and Casino,* 676 F.Supp.2d 953, 961 (E.D.Cal.2009) (Ishii, J.) relied heavily on *Sonoma Falls* in also concluding that removal does not trigger a waiver of tribal immunity. However, Judge Ishii was not definitive in reaching this conclusion, noting:

> At this point, the case law is not absolutely clear whether tribal sovereign immunity is more like the immunity enjoyed by the states or by foreign sovereigns in the circumstance of removal. There are a number of cases in which courts have applied tribal sovereign immunity after removal without addressing the issue. [Citations.] In other cases where tribes removed, courts have pierced immunity but not based on waiver from removal. [Citation.] These cases, in conjunction with *Sonoma Falls,* [*supra,*] leads to the conclusion that removal to federal court does not waive tribal sovereign immunity. However, the issue is not settled and appeal may be fruitful ....

Unfortunately, no appeal was taken, and the issue remains undecided by the Ninth Circuit.

The only on-point federal appellate decision appears to be *Contour Spa at the Hard Rock, Inc. v. Seminole Tribe of Fla.,* 692 F.3d 1200, 1206 (11th Cir.2012), in which the panel noted that "the precise issue before us—whether an Indian tribe's removal of a suit to federal court waives the tribe's sovereign immunity—is one of first impression among the circuits ...." The *Contour Spa* panel held that tribes do not waive their immunity by removing a case to federal court. Its principal reasons are as follows:

> · The panel distinguished *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.,* 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002) (holding that the State of Georgia waived Eleventh Amendment immunity through re-

moval)[1] on the grounds that "an Indian tribe's sovereign immunity is not the same thing as a state's Eleventh Amendment immunity" and that a tribe's waiver of immunity "must be unequivocally expressed." *Contour Spa*, 692 F.3d at 1206.

· Instead, the panel analogized tribal immunity to foreign sovereign immunity. After quoting the Supreme Court for the proposition that "[l]ike foreign sovereign immunity, tribal immunity is a matter of federal law," *Kiowa Tribe*, 523 U.S. at 759, 118 S.Ct. 1700, the Eleventh Circuit panel argued that "[m]uch like foreign sovereigns, Indian tribes have an interest in a uniform body of federal law in this area." *Contour Spa*, 692 F.3d at 1207.

· Ultimately, the panel was not inclined to force a tribe to "either forego its immunity from suit by removing the case or assert its immunity—itself a matter of federal law—*only* in state court." *Id.*

Defendants rely heavily on *Contour Spa* in their briefing.

Having summarized the (unsettled) state of the law in this area, let us turn to the arguments presented.

### 1. Alleged forum-shopping

Plaintiff claims that, in removing the case to this judicial district, defendants were engaged in forum-shopping. They point to a recent $30.4 million verdict in a jury trial against the Tribe in El Dorado Superior Court. *Sharp Image Gaming, Inc. v. Shingle Springs Band of Miwok Indians*, No. PC20070154. In that case, the Tribe (represented by the same counsel as herein) was allegedly unsuccessful in its efforts to remove to federal court. As the court informed plaintiff's counsel at hearing, it decides motions based on the facts presented and the law, and not on the basis of supposition. Accordingly, the court will disregard this argument entirely.

### 2. Comparisons to other forms of sovereign immunity

As discussed above, other courts considering whether removal constitutes waiver of sovereign immunity rely heavily on comparisons between tribal sovereign immunity and the sovereign immunity enjoyed by states and by foreign nations. The court in *State Eng'r*, 66 F.Supp.2d at 1173, likened tribal sovereign immunity to state sovereign immunity and found waiver on that basis; the other three courts found analogies to foreign sovereign immunity more apt, and accordingly, declined to find waiver.

The problem with this approach, in the court's view, is that tribal sovereign immunity is *sui generis*, making such comparisons largely inapt. Tribal sovereign immunity is rooted in Chief Justice Marshall's identification of tribes as "domestic dependent nations." *Cherokee Nation v. Georgia*, 30 U.S. 1, 17, 5 Pet. 1, 8 L.Ed. 25 (1831). "The doctrine [of tribal sovereign immunity] was originally enunciated by [the Supreme] Court and has been reaffirmed in a number of cases." *Okla. Tax Comm'n v. Citizen Band of Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 510, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (citing *Turner v. United States*, 248 U.S. 354, 358, 39 S.Ct. 109, 63 L.Ed. 291 (1919); *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. 1670). The contours of tribal sovereign immunity have largely been

---

**1.** The Ninth Circuit has adopted "a straightforward, easy-to-administer rule in accord with *Lapides:* Removal [by a State] waives Eleventh Amendment immunity." *Embury v. King*, 361 F.3d 562, 566 (9th Cir.2004).

drawn by the Supreme Court, abrogated from time to time by Congressional action.

By contrast, Congress provided foreign sovereigns with a statutory right of removal through enacting the Foreign Sovereign Immunities Act of 1976.[2] While the court in *Contour Spa*, 692 F.3d at 1200, acknowledged this fact, it failed to satisfactorily explain why the absence of a statutory right of removal for tribes is not fatal to the comparison between the two forms of immunity, at least where waiver-through-removal is concerned.

State sovereign immunity is, of course, a creation of the U.S. Constitution. *See, e.g., Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) ("[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty ... and that a State will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the 'plan of the convention.' "). It goes without saying that Native American tribes did not voluntarily enter into the Union, which diminishes the utility of comparisons to the states in this regard.

In light of the distinct foundations of tribal sovereign immunity, the court will not rely on analogies to these other forms of immunity in deciding this issue.

### 3. The availability of the sovereign immunity doctrine in multiple forums

In its order directing the parties to brief waiver-by-removal, the court noted that tribal sovereign immunity may equally be invoked in state and federal courts, and cited numerous California state cases in which tribes successfully raised an immunity defense.

The existence of such cases would appear to put the lie to defendants' assertions that removal to federal court is necessary in order to ensure uniformity in the law regarding tribal immunity. (Defendants' Opening Supplemental Brief 5.) In fact, the very notion of a "uniform body of federal law in this area," *Contour Spa*, 692 F.3d at 1207, is one of those notions that cannot withstand scrutiny. Because there is no dedicated removal statute for Indian tribes (as there is for foreign states), the defendants herein were only able to remove this action because plaintiff pled a federal claim along with her state claims. Defendants would otherwise have been left to raise immunity in state court. Countless cases share this procedural posture. In fact, at least one involved defendant Tribe: *Shingle Springs Band of Miwok Indians v. Workers' Comp. Appeals Bd.*, No. C032701, 2001 WL 1529124 (Cal.Ct. App. Sep. 26, 2001). There, a Health Clinic employee filed a workers' compensation claim against the Tribe; the Tribe, in turn, asserted sovereign immunity as a defense. California's Third District Court of Appeals agreed that the Tribe would ordinarily be immune from the administrative proceedings, but remanded to the Workers' Compensation Appeals Board to determine whether the Tribe had waived immunity. The case illustrates the multiplicity of proceedings and forums in which tribes may raise sovereign immunity. The situation is quite different from that in, say, *United States v. United States Fid. & Guar. Co.*, 309 U.S. 506, 60 S.Ct. 653, 84

---

**2.** *See* 28 U.S.C. 1441(d) ("Any civil action brought in a State court against a foreign state ... may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending").

L.Ed. 894 (1940) (finding that tribe did not waive its sovereign immunity against counterclaims by filing an action in federal court). There, the Supreme Court recognized that "[t]he sovereignty possessing immunity should not be compelled to defend against cross-actions away from its own territory or in courts, not of its own choice, merely because its debtor was unavailable except outside the jurisdiction of the sovereign's consent." *Id.* at 512, 60 S.Ct. 653. Here, by contrast, the defendants could just as easily have asserted sovereign immunity in state court. Accordingly, it is difficult to straightfacedly claim that encouraging the development of a "uniform body of federal law in this area" should be a dispositive factor, unless the "area" in question is the narrow slice of cases that are removable under 28 U.S.C. § 1441(a). The court sees no basis for drawing such a fine distinction.

■ Defendants invoked the jurisdiction of the federal courts to raise a jurisdictional defense that could equally have been raised in the state court. As the court recognized in its January 9, 2014 Order, "there appears no principled reason for defendants to have removed the action before asserting immunity." (ECF No. 40.) Defendants have advanced none in their briefing or at oral argument. The court therefore finds that the Tribe has unequivocally waived any claim of sovereign immunity through removal. And, as defendants Health Program, Health Board, and Brenda Adams's assertions of sovereign immunity derive from the Tribe's sovereign immunity, subject matter jurisdiction over plaintiff's claims against these defendants is also proper.

The court nevertheless shares Judge Ishii's hope that the defendants appeal this ruling so that a higher court may definitively resolve the issue.

## D. Are defendants' objections regarding the unavailability of injunctive relief well-founded?

Plaintiff's third claim, for violations of the FMLA and the California Family Rights Act, Cal. Gov't Code §§ 12945.1 and 12945.2, seeks, *inter alia:*

> injunctive equitable relief against the current Health Board chairperson Brenda Adams, sued in her official capacity (or whomever is the chairperson of the [ ] Health Board at the time of entry of this Order) for reinstatement in her position as the Executive Director of the Shingle Springs Tribal Health Clinic. Plaintiff seeks the same job duties, rights, responsibilities, salary and benefits as she enjoyed prior to her August 2012 termination. (SAC ¶ 90.)

The claim is brought against all defendants.

■ Defendants, in turn, move to dismiss the claim on the grounds that granting the requested relief would infringe on the Tribe's ability to govern itself in a purely intramural matter. This line of argument is inapt. "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe,* 523 U.S. at 754, 118 S.Ct. 1700. The objection that defendants advance is rooted in the first prong of this test. "[G]eneral Acts of Congress apply to Indians … in the absence of a clear expression to the contrary." *Fed. Power Comm'n v. Tuscarora Indian Nation,* 362 U.S. 99, 120, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960). The Ninth Circuit has "explicitly adhered to the *Tuscarora* rule … although [it] recognize[s] exceptions to it." *N.L.R.B. v. Chapa De Indian Health Program, Inc.,* 316 F.3d 995, 998 (9th Cir. 2003). In particular:

A federal statute of general applicability that is silent on the issue of applicability to Indian tribes will not apply to them if: (1) the law touches "exclusive rights of self-governance in purely intramural matters"; (2) the application of the law to the tribe would "abrogate rights guaranteed by Indian treaties"; or (3) there is proof "by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations ...." In any of these three situations, Congress must expressly apply a statute to Indians before we will hold that it reaches them.

*Donovan v. Coeur d'Alene Tribal Farm,* 751 F.2d 1113, 1116 (9th Cir.1985) (quoting *U.S. v. Farris,* 624 F.2d 890, 893 (9th Cir.1980), cert. denied, 449 U.S. 1111,. 101 S.Ct. 920, 66 L.Ed.2d 839 (1981)).

The cases that defendants cite—*EEOC v. Cherokee Nation,* 871 F.2d 937, 938 (10th Cir.1989) (finding that the Age Discrimination in Employment Act did not apply to defendant tribe in part due to "reluctan[ce] to find congressional abrogation of treaty rights"); *EEOC v. Fond du Lac Heavy Equip. & Constr. Co.,* 986 F.2d 246, 249 (8th Cir.1993) (refusing to apply Age Discrimination in Employment Act to dispute between tribe member and tribal employer, as doing so would "interfere[ ] with an intramural matter that has traditionally been left to the tribe's self-government."); *Pink v. Modoc Indian Health Project,* 157 F.3d 1185 (9th Cir.1998) (holding that nonprofit formed by two tribes fell within scope of Title VII's exemption of "tribe" from liability); *Middletown Rancheria of Pomo Indians v. Workers' Comp. Appeals Bd.,* 60 Cal.App.4th 1340, 71 Cal.Rptr.2d 105 (1998) (finding that 28 U.S.C. § 1360 did not provide state administrative agency authority over dispute between tribe member and tribal employer); and *EEOC v. Karuk Tribe Hous. Auth.,*

260 F.3d 1071, 1080 (9th Cir.2001) (determining that the ADEA did not apply to employment relationship between tribe member and tribal employer, which involved " 'purely internal matters' related to the tribe's self-governance.")—all involve determinations of whether, and the extent to which, Congress authorized suit against Indian tribes. As such, they are irrelevant to the present inquiry. Given that the court has found that the Tribe waived its sovereign immunity through removal, it need not assess the extent to which Congress may have abrogated tribal immunity in enacting the FMLA.

Defendants also move to dismiss this claim on the grounds that tribal officials cannot be sued for injunctive relief in an attempt to circumvent a tribe's sovereign immunity, citing cases such as *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.,* 276 F.3d 1150 (9th Cir.2002) ("[Plaintiff]'s argument strikes us as an attempted end run around tribal sovereign immunity.") in support. Again, defendants' argument fails because the court has found that the Tribe waived its immunity through removal.

### E. Is plaintiff's claim for injunctive relief against the Chairperson of the Health Board cognizable?

Defendants move to dismiss defendant Health Program from the action, arguing that it has no legal existence separate from that of the Tribe and the Health Board. In support, defendants submit the declaration of one Ernest Vargas, Jr., the Tribe's Tribal Administrator and former Finance Director. (Decl. Vargas ¶ 1, ECF No. 20.) Vargas avers as follows:

· "Since approximately 1995, the Tribe has operated a full-service health clinic. [ ... ] The Tribe's health clinic, or program, is wholly owned by the Tribe, and has no corporate existence sepa-

rate from the Tribe, under federal, state, or tribal law." (*Id.* ¶ 20.)

· "As Executive Director of the health program. Ms. Bodi was directly employed by the Tribe itself, and her earnings statements reflected that she was employed by the 'Shingle Springs Rancheria,' another name the Tribe has used to identify itself. Attached hereto as Exhibit EE are true and correct copies of Ms. Bodi's earnings statements dated June 15, 2012, June 29, 2012, and July 13, 2012." (*Id.* ¶ 21.)

· "The Tribe runs the health clinic (or health program) through its Shingle Springs Tribal Health Board, a governmental unit comprised of nine directors selected from the Tribe's membership and staffed and controlled by the Tribal Council, the Tribe's governing body. At its sole discretion, the Tribal Council appoints Health Board directors and may remove them, with or without cause. The Health Board elects a Chairperson to preside at all meetings of the Board." (*Id.* ¶ 23.)

· " 'Shingle Springs Tribal Health Program' is registered with the State of California as a fictitious name by which the Tribe does business. Attached hereto as Exhibit FF is a true and correct copy of the Tribe's Fictitious Business Name Statement for 'Shingle Springs Tribal Health Program' ... filed with the Office of the El Dorado County Clerk on July 24, 2012." (*Id.* ¶ 24.)

Plaintiff has failed to adduce any evidence to the contrary. It therefore appears that defendant Health Program must be dismissed from this action for lack of any legal existence independent of the Tribe and the Health Board.

## IV. CONCLUSION

In light of the foregoing, the court hereby orders as follows:

 Defendants' motion to dismiss Shingle Springs Tribal Health Program as a defendant is GRANTED.

The remainder of defendants' motion to dismiss plaintiff's Second Amended Complaint is DENIED.

IT IS SO ORDERED.